No. 20571.

LURA MORGAN, ET AL., *v.* CLARA LEE WRIGHT, ET AL.
(399 P.2d 788)

Decided March 8, 1965.

HAROLD D. LUTZ, for plaintiffs in error.

GEORGE H. LERG and ALEX STEPHEN KELLER, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS is an action primarily designed to impress a trust on certain real estate, title to which is held by defendants in error, who are husband and wife. Plaintiffs in error were also plaintiffs in the trial court and will be referred to as plaintiffs or by name.

The record discloses that Emma Wright, mother of defendant Clara Lee Wright and mother or stepmother, as the case may be, to the various plaintiffs, owned 320 acres of grazing land in Logan County, Colorado. On December 31, 1937, Emma, apparently without the request of and admittedly out of the presence of Clara Lee, conveyed the land in question outright to Clara Lee

with the knowledge of at least two of the plaintiffs. At that time, and often thereafter, the mother lived in the home of or in a small cottage close by Clara Lee's home in the Denver area. Prior to conveying the land to Clara Lee, the mother had proposed to convey it to her son Clarence Wood who declined the offer.

The record discloses that Clara Lee alone paid the taxes on the property after 1937, and she alone looked after it. On January 20, 1951, she leased the land for oil and gas exploration and received $1,600.00 including the bonus payment. Emma Wright died on August 1, 1952, and on February 18, 1953, Clara Lee conveyed the lands to herself and to her husband in joint tenancy.

The cash payment received in 1951 was divided by Clara Lee with the plaintiffs. She sent or gave each one a check as follows, viz: To Ruby she gave $405.00 with a notation on the check that read "1/6 of oil lease plus $140.00 Owen owed"; to Lura she gave $265.00 noting "1/6 of Oil Lease"; to Clarence $265.00 noting "1/6 of oil lease"; to Bernice $215.00 noting "1/6 of Oil Lease less $50.00 owe me"; and to Owen $125.00 noting "1/6 of oil lease less $140.00 owed to Ruby."

Though Clara Lee continued to receive both grazing rentals and an annual oil and gas lease rental of $320.00 after 1951, as well as later gas royalty checks, she made only one other distribution to plaintiffs, that was in 1956 when she sent each one a check for $42.65. That time Ruby's, Clarence's and Owen's checks bore a notation of "1/6 of Oil Lease (tax paid)" and Lura's and Bernice's said "1/6 of oil lease."

The evidence is that when one of the plaintiffs discovered that there was a gas well on the property in 1959, she consulted with the other plaintiffs and, evidently without making any demand on Clara Lee of any kind, filed suit on April 18, 1960, seeking to impress a trust on the property for their benefit; also they sought conveyances of their alleged interests, and demanded an

accounting. The answer denied the material allegations of the complaint and claimed laches as well as that the claims were barred by various statutes of limitation.

At the trial, Clara Lee was called as an adverse witness and testified as follows: that she owned the land outright; had paid income taxes through the years on all income received therefrom; had paid all property taxes and expenses; and that the distributions made by her were only gifts to her brothers and sisters and were to repay each of them certain sums they had loaned or given to their mother to help her pay off a farm mortgage in Missouri. It appears that the Missouri farm had later been traded by the mother for the Logan County land. Three of the other children and one disinterested witness also testified — some of which testimony was blatant hearsay and some of which contradicted Clara Lee's claim of sole ownership. Her testimony about the original Missouri mortgage payoff and her operation of the Colorado land, however, were not contradicted.

Following the conclusion of plaintiff's case, defendants in error moved that the complaint be dismissed which motion was later granted.

The judgment and finding of fact are attacked by the plaintiffs on two grounds, viz:

(1) That the trial court erred in finding that the only evidence presented was "oral testimony much of which was inadmissible" because the written checks were in evidence; and,

(2) The evidence showed conclusively as a matter of law that an express trust had been executed by the mother.

■ Turning our attention to the first ground, an examination of the six page findings and judgment fails to sustain the plaintiffs' allegation. The court fully recited the gist of the pertinent testimony, and in regard to the checks admitted into evidence, it stated:

"There is evidence that the defendants (sic) paid to the

plaintiffs certain sums as disclosed by the checks in evidence in which she states on checks dated March 1, 1951:

" '1/6 of oil lease plus $140,' which the defendant Clara Lee Wright testified was the loan made by these plaintiffs to the mother several years previously. On the checks dated in 1956 she merely states, '1/6 of oil lease.'

"Obviously the main purpose of the checks dated in 1952 was to repay the children for the money which had been previously loaned to protect the Missouri property from the encumbrance thereon."

As to the second ground urged upon us by the plaintiffs we also find it to be without merit.

■■ The rules applicable here are that a "record on error must be viewed in the light most favorable to the judgment, the presumption being that the determination of the trial court is correct." *Baumgartner v. Tweedy,* 143 Colo. 556, 354 P.2d 586 (1960). And, that "In order to constitute an express or voluntary trust, the essentials of a trust must appear clearly. Clear, explicit, definite, unequivocal and unambiguous language or conduct is required." 89 *C.J.S., Trust,* § 45.

■■ All these parties agree that the trust in question must be an express trust if it exists at all. This record discloses that the trial court was correct in holding that plaintiffs failed to carry their burden of establishing such a trust. Their evidence at best was indefinite as to the alleged creation of an express trust and there is a clear conflict as to why Clara Lee, who was in possession with a record title since 1937, issued the checks in question. As to the former point the presumption is that a transfer between a parent and a child is a gift until the contrary is clearly and unequivocally shown. *First National Bank of Fort Collins v. Honstein,* 144 Colo. 176, 355 P.2d 535 (1960). That was not done here.

The judgment is affirmed.

Mr. Justice McWilliams and Mr. Justice Schauer concur.